```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHEILA MANNS,<br><br>    PLAINTIFF,<br><br>v.<br><br>JO ANN B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    DEFENDANT. | Civ. No. 05-1432<br><br>OPINION |

APPEARANCES:

    ABROMSON & CAREY.
    By:  Agnes S. Wladyka
    60 Park Place, Suite 601
    Newark, New Jersey 07102
        Attorney for Plaintiff

    CHRISTOPHER J. CHRISTIE
    UNITED STATES ATTORNEY
    By:  Suzanne M. Haynes
        Special Assistance U.S. Attorney
    26 Federal Plaza, Room 3904
    New York, New York 10278
        Attorney for Defendant

BASSLER, DISTRICT JUDGE:

    Plaintiff Sheila Manns ("Plaintiff") brings this action under § 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g) and § 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") by which Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income Benefits was

denied. For the reasons set forth in this opinion, the Commissioner's decision is affirmed.

## I. **Background**

Plaintiff was born on August 23, 1955 and worked as a sorter for UPS for sixteen years until approximately April 2001. On May 3, 1999, Plaintiff slipped at work and fell on her right shoulder and lower back. She was placed on work restrictions limiting her from overhead activity, but because her job required her to frequently lift up to fifty pounds, she continued to experience discomfort in her right shoulder. A subsequent MRI revealed a rotator cuff tear, so Plaintiff underwent surgery to repair it on January 21, 2000. She returned to work after the surgery with a permanent lifting restriction above the chest and experienced difficulty reaching behind her and to the side.

Plaintiff experienced continued discomfort, so she underwent another rotator cuff repair surgery on her right shoulder on October 3, 2001 and subsequent physical therapy. In March of 2002, Plaintiff did not perform well on a functional capacity evaluation,[1] so the treating physician, Dr. Leonard Jaffe, recommended she consider vocational retraining (T 208).

---

[1] The physical therapist, Kevin Brown, indicated in his report of the Functional Capacity Evaluation that Plaintiff put forth poor effort during the testing, and thus her true functional ability could not be determined. (T 224)
2

Dr. Jaffe stated in July 2002 that Plaintiff is capable of doing a sedentary or light job (T 211).

Plaintiff attempted vocational retraining but did not complete the course.  She stated that her arm bothered her too much due to the positioning of the keyboard, so she was not able to attain any speed in typing.  Plaintiff did state, however, that if she can support her arms on a table or desk in front of her, she is comfortable.

On November 12, 2002, Plaintiff underwent a neurological and neuro-psychiatric evaluation by Dr. Angela Adams.  Dr. Adams felt that Plaintiff had adjustment disorder with mixed anxiety and depressed mood, with a partial permanent disability of 20% from a neuro-psychiatric standpoint (T 264).

Dr. Arthur Tiger, an orthopedist, also examined Plaintiff in November 2002 at the request of her attorneys for Workers' Compensation purposes.  Dr. Tiger stated that Plaintiff had limited motion in the right shoulder and cannot do repetitive work at shoulder level (T 266).

In March 2003, Plaintiff underwent a subsequent psychological evaluation with Dr. A.J. Candela.  Dr. Candela determined that Plaintiff had a full-scale IQ score of 72, placing her in the defective range of intellectual functioning; Dr. Candela also stated plaintiff was clearly depressed and recommended psychotherapy (T 330).  There is no indication that

Plaintiff underwent this recommended psychotherapy.

Plaintiff applied for Disability Income Benefits and Supplemental Security Income Benefits, which were denied initially and on reconsideration.  Plaintiff was granted a hearing by an Administrative Law Judge ("ALJ"), Dennis O'Leary, on June 30, 2004.  During the hearing, ALJ O'Leary used a Vocational Expert ("VE"), Rocco J. Meola, to determine whether there are significant numbers of jobs in the national economy that Plaintiff could perform given her residual functional capacity[2] ("RFC") and other vocational factors.  Mr. Meola determined that there are approximately 40,000 jobs in the national economy, and 1,200 jobs in the regional economy, that Plaintiff could perform.  ALJ O'Leary found that Plaintiff retained the capacity for work existing in significant numbers and was not disabled within the meaning of the Social Security Act; he therefore denied her application for benefits.

## II.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act.  The Court's review is limited to determining whether the ALJ's factual findings are supported by substantial

---

[2] The residual functional capacity is the level of work the claimant can still perform, and is determined by the ALJ.

4

evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Substantial evidence means "'more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The Third Circuit has held that the substantial evidence test is deferential, and therefore, courts should grant deference to an ALJ's fact determinations if those inferences are supported by substantial evidence, "even [where] this court acting *de novo* might have reached a different conclusion." Hunter Douglas, Inc. v. N.L.R.B., 804 F.2d 808, 812 (3d Cir. 1986).  The Court may reverse the ALJ's decision and award benefits only where "substantial evidence on the record as a whole indicates that the defendant is disabled and entitled to benefits." Podeworney v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984)(citations omitted).

### III.  Sequential Evaluation Process for Disability Benefits

Eligibility for disability benefits is determined through a five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  First, the

claimant must not be working at a substantial gainful activity to be found disabled. 20 C.F.R. § 404.1520(b). At step two, the claimant must show a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do work. 20 C.F.R. § 404.1520(c). Third, the ALJ compares the impairment to see if it meets or equals the listed impairments at 20 C.F.R. § 404, Subpart P, Appendix 1 ("Appendix"). If so, the claimant is entitled to disability benefits and the analysis ends. 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal those listed in the Appendix, the analysis proceeds to the fourth and fifth steps.

At the fourth step, the ALJ determines the claimant's RFC to determine whether the impairment prevents the claimant from performing her previous work. 20 C.F.R. §§ 404.1520(e)-(f). Finally, if the claimant cannot perform his previous work, the ALJ must determine whether the claimant can make an adjustment to other work available in the national economy. 20 C.F.R. § 404.1520(g). The ALJ must consider the claimant's RFC level together with claimant's age, education and work experience. Id.

The burden of proof in steps one through four falls upon the claimant, but at step five, the burden shifts to the Commissioner to prove that the claimant can perform other available work. Ferguson v. Schweiker, 765 F.2d 31, 36 (3d Cir. 1985); Rossi v. California, 602 F.2d 55, 57 (3d Cir. 1979).

Here, ALJ O'Leary found in steps one through three that Plaintiff has not engaged in substantial gainful activity since the onset of her disability, and that her shoulder impairment is severe but does not meet or medically equal the impairments listed in the Appendix.  ALJ O'Leary also determined that Plaintiff's RFC consists of the ability to sit up to six hours in an eight-hour work day; to stand or walk up to six hours in an eight-hour work day; to carry up to ten pounds bilaterally, but without right dominant arm overhead reaching and without her left arm reaching more than two-thirds of the way overhead; that she cannot hold her arms parallel to the floor and engage in repetitive or continual reaching in that manner; and that plaintiff is limited to unskilled work activity.

Based on her RFC, ALJ O'Leary found that Plaintiff is unable to perform any of her past work and that although Plaintiff cannot perform the full range of light work, there are a significant number of jobs in the national and regional economy that she can perform.  Therefore, the ALJ found that Plaintiff is not disabled as defined under the Social Security Act.

**IV.  Discussion**

On appeal, Plaintiff maintains that ALJ O'Leary's decision was not supported by substantial evidence.  Firstly, Plaintiff contends that ALJ O'Leary improperly evaluated the medical

evidence by not giving full weight to her subjective testimony regarding pain; she states that the Third Circuit has held that pain can be disabling, even if not supported by objective findings.  Plaintiff also argues that the ALJ failed to fully explore whether her disability fell within one of the categories of impairments of the Appendix.  She states that ALJ O'Leary should have evaluated Plaintiff's physical impairments in combination with her mental impairments, and had he done that, he would have found that her impairments meet or medically exceed those listed in the Appendix.  Lastly, Plaintiff argues that the Commissioner erred in finding that Plaintiff is able to perform the full range of light work.

This Court reviews the ALJ's opinion to determine if it is supported by substantial evidence.  It does not review such appeals de novo.  The Court finds there is substantial evidence supporting ALJ O'Leary's decision, and therefore affirms the decision.

### A. The ALJ Properly Considered the Medical Evidence

ALJ O'Leary adequately accounts for Plaintiff's complaints of pain in his evaluation.  Although the ALJ must consider Plaintiff's subjective symptoms in assessing Plaintiff's disability, such subjective evidence must be reviewed to see if it is reasonably consistent with objective medical evidence in the record. 20 C.F.R. § 404.1529(a).  The ALJ recognizes that

8

Plaintiff experiences discomfort in her shoulders, particularly when reaching above her head, but concludes that there is no evidence of disabling pain which precludes lighter activities (T 18). Plaintiff's physical limitations are in the realm of overhead and repetitive reaching, but her fine and gross motor coordination is adequate. Dr. Jaffe suggests that Plaintiff will have residual discomfort in her shoulder, but that she is capable of performing a modified light or sedentary job (T 208). According to the physical therapist administering the functional capacity evaluation, Plaintiff's poor performance was due to submaximal effort and not related to pain or medical impairment. ALJ O'Leary further notes that Plaintiff lives independently and takes only over-the-counter pain medication, indicating the discomfort she experiences is manageable.

This Court finds that there is substantial evidence in the record supporting ALJ O'Leary's determination regarding Plaintiff's subjective complaints of pain and their consistency with objective medical evidence. Therefore, "[t]he Court is bound by the ALJ's findings of fact." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir 1999).

### B. The ALJ Properly Considered Plaintiff's Mental Disabilities and Physical Disabilities in His Step Three Determination

According to 20 C.F.R. § 416.923, the combined effect of all impairments must be considered throughout the disability evaluation process. At step three, the ALJ must determine whether Plaintiff's impairments meet or medically equal the listed impairments in the Appendix. If so, Plaintiff is entitled to disability benefits; if not, the analysis proceeds to steps four and five. Plaintiff contends that the ALJ failed to consider the combined effect of her physical disabilities with her mental impairments when he determined that she did not meet any of the impairments listed in the Appendix in step three. The Court disagrees.

ALJ O'Leary discusses for a full page in his opinion the evidence he relied on to conclude that Plaintiff's physical impairments do not meet or medically equal the impairments listed in the Appendix (T 17). Drs. Schultz and Jaffe both stated in the record that Plaintiff has a full range of motion in her right shoulder, although with discomfort, and Dr. Friedman stated she has good strength and coordination, full passive range of motion, and an active range of motion limited to 100 degrees. ALJ O'Leary concluded that this evidence does not result in an

inability to perform fine and gross movements effectively as defined in § 1.02.

The ALJ also concluded that there is no evidence that Plaintiff's feelings of depression, anxiety, worthlessness and loss of interest do more than mildly limit her ability to perform daily activities, and therefore she does not have a depressive disorder with marked limitations as required in § 12.04 of the Appendix.[3]  Furthermore, Plaintiff's IQ results are above those required in § 12.05 to establish a subaverage intelligence.[4]

The ALJ did not use express language stating he was evaluating both types of impairments in combination with one another, but he is not required to use such language.  The Court finds that at worse, this is a harmless error, as the Court's

---

[3]Section 12.04 of the Appendix requires that depressive syndrome, characterized by at least four symptoms listed in part A (such as pervasive loss of interest, sleep disturbance, decreased energy, difficulty concentrating, suicidal thoughts, and feelings of guilt or worthlessness), be present, as well as at least two results from such above symptoms listed in part B, which are (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, or (4) repeated episodes of decompensation.  While it is clear from the medical records that Plaintiff does exhibit at least four of the symptoms listed in Part A (T 129, 263-64, 327-30), the ALJ properly concluded there is no evidence in the medical record supporting any of the required findings in part B to meet the requirements of a severe affective disorder under § 12.04.
[4]To meet the requirements in § 12.05, Plaintiff must show dependence upon others for personal needs and the inability to follow directions, or valid verbal, performance or full scale IQ of below 70 in combination with other impairments.

evaluation shows that the combined effects of Plaintiff's impairments are consistent with ALJ O'Leary's findings.

Taken in combination, Plaintiff's impairments do not preclude her from effectively performing fine and gross movements under § 1.00(B)(2)(c), as she is still able to independently initiate, sustain, or complete daily activities such as preparing a meal and feeding herself, taking care of personal hygiene, and carrying out other activities of daily living.  Therefore, Plaintiff does not meet or equal the requirements of a Major Dysfunction of a Joint listed in § 1.02 in the Appendix. Similarly, Plaintiff's ability to carry out daily activities, even given the combined effect of her impairments, also precludes her from meeting the requirements of an affective disorder in § 12.04 and the requirements of a severe mental defect under § 12.05.  Because there is substantial evidence to support ALJ O'Leary's finding that Plaintiff does not meet or medically equal any of the impairments listed in the Appendix, the Court affirms ALJ O'Leary's step three findings.

  C. **Plaintiff's Residual Functional Capacity Was Properly Determined and Used in Steps Four and Five**

In step four, the ALJ performs a two-prong analysis.  First, the ALJ is required to determine Plaintiff's RFC by evaluating the level of work she is still capable of performing, and secondly, the ALJ must ascertain whether her impairments prevent

her from performing her previous work.  To determine the physical exertion requirements of work in the national economy, jobs are classified by the Department of Labor as sedentary, light, medium, heavy, and very heavy based upon the definitions in the <u>Dictionary of Occupational Titles</u> and the guidelines in 20 C.F.R. §§ 404.1567 and 416.967.

Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  Light work also requires either a "good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." <u>Id.</u>  In contrast, sedentary work requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and is mostly performed while sitting, although "a certain amount of walking and standing is often necessary." <u>Id.</u> at § 404.1567(a).

The Plaintiff contends that the ALJ erred in determining that she could perform the full range of light work.  However, Plaintiff mistakenly states ALJ O'Leary's findings.  ALJ O'Leary found that she could perform a significant range of light work, not the full range.  The ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of light

work is impeded by her shoulder limitations, and the resulting RFC determination exhibits these limitations.[5]

Plaintiff cannot reach overhead or reach repetitively, but the functional capacity test reveals that she can lift up to fifteen pounds occasionally, and can frequently carry up to ten pounds. Furthermore, the test indicates that Plaintiff can sit between 34-66% of her day, walk up to 33% of her day, stand up to 33% of her day. (T 282). The functional capacity test classifies Plaintiff as able to perform sedentary-light work (T 294). Furthermore, Dr. Jaffe indicated that Plaintiff can perform modified light or sedentary work. For these reasons, this Court finds that the RFC determination that Plaintiff can perform a significant range of light work, but not the full range, is consistent with the evidence in the medical record.

After determining the RFC, ALJ O'Leary correctly finds that Plaintiff's prior work history, consisting of her 16 years as a sorter at UPS, exceeds her RFC because it required significant overhead reaching and frequent lifting up to fifty pounds. Thus, Plaintiff is unable to return to her previous position.

---

[5] The RFC determination states that Plaintiff should not reach overhead with her right dominant arm or more than two-thirds of the way overhead with the left arm, hold arms parallel to the floor and engage in repetitive or continual reaching in that manner. However, Plaintiff can sit up to six hours in an eight-hour work day; stand and walk up to six hours in an eight-hour work day; and lift and carry up to ten pounds bilaterally.

In step five, after determining the Plaintiff cannot return to her previous work, the ALJ is required to determine whether Plaintiff can adjust to any other work in the national economy. The ALJ is permitted to use the opinion of a VE in making a determination at this step.  ALJ O'Leary accurately related Plaintiff's RFC and her specific limitations to the VE, who determined that there are a significant number of jobs in both the national and regional economies that Plaintiff can perform. It is noted in the testimony of the VE that if Plaintiff is unable to use her dominant right arm at all, she would likely be limited to only one job, that of a systems monitor, of which there are approximately 150 to 200 jobs in the regional economy; however, if she can use her right dominant arm with the limitations listed in the RFC, there are three potential jobs she could perform (systems monitor, document preparer, and parts inspector), and 1,200 of such jobs in the regional economy and 40,000 nationally.  Thus, this Court finds that there is substantial evidence to support the ALJ's step four and step five findings.

**V. Conclusion**

For the reasons stated in this opinion, the Court affirms the ALJ's decision to deny Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income. An appropriate order accompanies this opinion.

/s/ William G. Bassler
_____
William G. Bassler, U.S.S.D.J.

Dated: June 22, 2006